Mr. Keston. May it please the Court, my name is Leonard Keston and I'm here arguing for the Town of Framingham and Officer Duncan. May I reserve three minutes for a rebuttal? How many? Three. Three, yes, you may. This case involves a tragedy that happened on January 4, 2011 when Mr. Stamps died as a result of an accidental discharge of a weapon by Officer Duncan during a high-risk SWAT raid on a house in which the officer suspected that there were This case also is an important constitutional issue in which the circuits are all struggling with the questions. Despite what Judge Saylor ruled, the law is certainly not clear. Counsel, think about how you're going to divide your time. I think you may have a more serious need to spend on the other aspects of qualified immunity than clearly established. Well, okay. Well, hear your argument that the law is not clearly established, that you should not, unless there is a police need to do so, have an assault weapon and keep it pointed at the head of the victim. That's more or less the proposition you're going to have to argue. Okay. Okay. Okay. In the cases, if you review, and I'm sure you have and will review all the cases around the country, there is the question as to whether the three issues that the judge was troubled by. One was the officer went in with the safety off, which is not a constitutional violation. There are... Just fast forward this. Go up to the moment right before the gun is fired. Right before the gun is fired. We have from the briefs the whole scenario of the safety off, the finger on, he's lying on the floor, he's looking up, there are other officers in the room. Is that a violation of his constitutional rights at that moment before the gun is fired? Because if it's so, it would seem that everything else then flows from that violation. So... If you accept the notion that you look at that, even though this is accidental, understand something, Your Honors. Yes. If this circuit rules that the conduct leading up is to be measured in light of a... and lets this case go to a jury, it will be the first time in any case in this country in which an officer who pointed a gun at somebody with his finger on the trigger in a case which is not called for deadly force and had the gun gone off by accident, that a circuit is allowed... Yes, but your opponents replied that you're setting up an immunity for the officers in a policy for us to... Absolutely. All right. But it's an accident. What's important for this court to focus on is that the shot wasn't intentional. And if you're pointing a gun, holding somebody at gunpoint during a high-risk search is constitutional. In all circumstances? During a high-risk search, yes. You can detain them, you can point a gun at them. So you're saying we should rule that the United States Constitution allows an officer in a search to any person he encounters to expose that person to any risk of harm, no matter how great, no matter how disproportionate to the circumstances, and as long as all he's doing is exposing the person to the risk, but he doesn't actually want the person to be killed, there's no violation? First of all, there's always a risk. In a SWAT raid... Sure, there's always a risk, but what about when the level of the risk goes up? Suppose he put three bullets in his chambers of a six-shooting gun and played Russian roulette with the person. He didn't want one of the guns to go off. He's just exposing him to that risk, and lo and behold, one of them goes off. You're talking about a risk with the officers. I mean, clearly, he's gambling with somebody's life. If you read all the cases, in every case where the courts address this, these are officers who are holding weapons with their fingers on the trigger and going to struggle with a suspect whom they have no right to shoot. Much higher risk than just standing there. In every one of these other cases where the courts have ruled in favor of the officers, they have said that that law is not... it's a much higher risk. So what you have here is you have to... the cases they... Suppose the guy was handcuffed on the floor. Yes. All right. And had been searched by the other two officers. And was 87 years old. Could the officer still come up, put the gun on him, turn the safety off, and put his finger on it and start dancing? Would that be a violation of the Constitution? If he had his... well, first of all, if you decide that the shooting was accidental. Yeah. He's just showing off. He's not... he doesn't intend... But he's increasing the risk of injury, and that's what that line of cases is about. Yes, but what... And maybe you better walk us through this, because as I understood it, it's a given in this case that the man lying on the ground was no risk whatsoever to the officer. There was no reason to have put a gun to his head. The other two officers who are busy searching elsewhere obviously think he's no risk, because they've left him lying on his stomach in a hallway. Knowing there were officers behind them to secure the suspects. Your Honor, in every high-risk search, in every high-risk search, the officers secure everyone in the house. You do not make a determination while the search is going on. The case they point to, which held that holding a gun to this nine-year-old's head, the factors the court looked at was the search was finished, everybody was secured, and the officer continued to hold the gun to the child's head. Do I have evidence in this record that the other officers were continuing the search? Yes. Because I haven't found it. Yes. The search was not finished. When Duncan... The other officer... What happens is they come in in a stick. There's 10 officers, they come in in a line, and then they split up. They split up. One group with Duncan is in goes to the right, starts clearing those rooms. The other officers are going straight in. Those officers, when they see people, which is what they do, they order them on the ground. They don't examine them at the time to see who are you, are you a threat. Everybody's a threat. No. Pardon me. They allege that the officers knew going in that the father of the suspect was there. He was of a certain age. He was considered not a risk whatsoever. I understand you may dispute that, but for these purposes, that's what I understood. They hold everyone, even everyone in the building is held. They do not, in this kind of situation... What do you mean by held? You put handcuffs on everyone? Well, according to Officer Duncan, that's what he was going to do, and the gun went off. They say, based on their expert's trajectory, that he wasn't doing anything. He was just standing there. So you have this dispute. But, you know, for the purpose of this, we have to accept what their expert says, that he just put his gun on him. According to Officer Duncan, that's exactly what he was going to do. He was going to do what the officers were doing in these other cases. What need, what reasonable need did he have to put a gun with the safety off and his finger on the trigger on the person lying on the floor? What was he accomplishing by having his finger on the trigger and the safety off in that situation? There is no evidence in this case that the officer volitionally put his finger on the trigger. That he intended to do it. Well, I think a jury could find that his finger doesn't get there unless he tells his finger to go there. So let's assume the jury could find that. Well, okay. If a jury finds... And so my question, if you'd come back to the question, what was the officer, what did he accomplish that is at all reasonable? By doing the guys on the floor, there are two other officers there. The guy doesn't know if the safety's on or off, right? The guy lying on the floor. The guy on the floor doesn't know if the finger's on the trigger or not. So the threat of force to him is the same, whether or not the safety's off or on. What's the officer accomplishing? If the gun doesn't go off, does he have a Fourth Amendment claim? That was my original question to you. Yeah. I say no. Why not? Because no court has ever so held. That's a different argument. He didn't have adequate notice. And therefore, even if there was a Fourth Amendment violation by the officer's conduct, no case in these circumstances had so held. And therefore... Correct. That's where I started. No, that isn't. Well, I was trying to... I asked you to save time to address that question. I'm sorry. Is that a Fourth Amendment violation? Officer, you're asking the hypothetical that the officer intentionally puts his finger on the trigger while pointing it at a man during a SWAT raid. I'm not sure that that's a Fourth Amendment violation. I really am not sure. But you would have to have evidence that he made some decisions. You would have to explain why he did it. Don't we need... I mean, these are terribly fraught situations. They're dangerous for the officers. All right. So they're all hepped up going in there. But they're really dangerous for the people in the building. And we also know that there are hundreds, if not thousands, of these SWATing incidents where officers show up and everyone inside is an ordinary law-abiding citizen. So you've got to have some balance of reasonableness. Why shouldn't, when it gets to some point, the jurors start asking whether that balance is out of whack? Because, Your Honor, that is the whole point of the 20-20 hindsight situation, where the courts say, we're not going to do that to these officers. When they're in a life-and-death situation, it's 930 at night. They don't know if somebody's going to pull up a gun, if somebody's going to shoot behind them, or if he's going to pull up a gun. They don't know what's going to happen. So the officers get a lot of discretion from the courts when making those decisions. When they're making those decisions in split seconds. Had he held the gun for seven minutes? If you look at the holding the gun to the head cases, which are much worse than this, I mean, the nine-year-old, the courts focus on, well, the search is finished. There's no more evidence going on. In this case, the record shows they are in the midst of a search for a place where there might be weapons. Okay, because I haven't found it. I'd like you to send us a 28-J letter where you say those facts are... Sure, that the search is still going on. Search is still going on. You know, how long after the guy is put on the floor, does Officer Johnson show up? Duncan, it's less than a minute. Is that in the record? We will send you the record that shows this is in the heat of the search. The other officers hear a noise. They're looking for somebody in the bathroom, and he's backing them up. At least according to him, he then decides to go hands-on on the gun. He trips. They say their expert says that can't be. He must have still been standing there. But we're talking within a minute of the start of the search. So this is an officer standing there for a while, dancing, putting his finger on the trigger. This is somebody who comes across an unsecured. He's not cuffed. If those officers were secure, they would have cuffed him before they left him. That's what they do. They always cuff people. But they were heading to the back of the house to deal with an unknown threat. Nobody knew when somebody was going to open up with a weapon on them. See, they never know. Mr. Keston, I do have a question about the strategy of the defense. You say that there are a lot of differing views of the facts of this case. But you add oral argument. And yet, you didn't contest appellate jurisdiction on the basis that there are too many facts in dispute, which you might have done. Instead, you've chosen to defend on the basis that taking the facts from their point of  view. Why did you make that choice? Because we're up here on qualified immunity. It's the only reason we get here. The only reason we're before you is because of the qualified immunity right to an interlocutory appeal. Right. And we're here because, in large part, in sole part, there is no case that would have put these officers on notice that what they were doing was unconstitutional. And while they claim that they're – I mean, Judge Saylor disposed of it by saying that I disagree with the other judges. I mean, there's a 2015 10th Circuit case on point which says accidental shooting, no matter what, can never be. There's a 2nd Circuit case. No matter what, it can never be. So, yes, Judge Saylor – to accept that proposition. No, it – well, on qualified immunity? It most certainly does. If – the law has to be clear. That is the whole notion of – the law has to be clear that pointing a gun at somebody during a SWAT search, while the search is still going on – because the law is clear that if it's all over and everybody's secured, you can't do it – while the search is going on, it's unconstitutional. The high-risk cases – The line that you were drawing was accidental, non-accidental. Yes. The discharge is accidental. No question stipulated in this case. The cases that have gone to a jury in these circumstances is when the courts have said there's enough here for someone to – for a minor offender to find he intentionally shot him. But we're not talking in this case, really, about the shooting. The shooting is a ramification of – It's an accident. The prior – Of the conduct that we're assessing as to whether that conduct, A, is a violation of the Constitution, and B, having been determined to be a violation of the Constitution in a way that would put the officers on notice, in theory. What I want you – the way I suggest you look at it is in these other cases where there is no right to use deadly force – if there's a right to use deadly force, there's no issue, right? In every one of these other cases, every one that's cited, they're the one that anybody's ever found. The officers do not have a right to use deadly force and yet engage a suspect who's not – does not pose a danger to the force of them with a gun in their hand, with their finger on the trigger, and they're struggling with the guy. Much higher risk of a death. And the death happens. And the courts have either said it's reasonable or it's qualified immunity. It's not going to the jury. Much higher risk than standing perfectly still with a gun. See, they're focusing that that's the high risk. I suggest you it's a much higher risk if you're grabbing a guy with a gun in your hand with a finger on the trigger and bang. This court, in an opinion I wrote, Modelinsky, which was another SWAT team attack on a family only in New Hampshire, has already deviated from the model that you are putting in front of us. We did say keeping the rifle to the head of a 16-year-old, 15-year-old for 7 to 10 minutes. Yes, you recognize the case. Of course. And we're always taught to read the cases of the panel. But yes, I recognize the case you're on. That's the point. Oh, we said there no reasonable officer could have consistently with the Fourth Amendment test have thought that was appropriate behavior. 7 to 10 minutes. Absolutely. And so was the other case. And I forget the name of it. But we've already started down the path that Judge Kayada articulated to you, which is you don't just look at the end. You look at the steps along the way. And you are responsible for the consequences that flow from your choices, which were in violation of the Constitution. And you seem to be saying, no, you are not responsible for the consequences if no harm comes from it. You mean if, well, in your case, he threatened the person with the gun. She was in fear in your case, right? And you don't think this fellow was, in this case, that a jury could find him? But if the officer pointed the rifle at him with no finger on the trigger and the safety off, he would have no case. Because what I'm telling you is, in the heat of the battle, I agree with all the cases that say once it's all over, they don't get to do it. That's why the key point, as you've asked a letter on, that's the key point here. This is in the heat of it. It's momentary. And no case has suggested that's unconstitutional. Judge Saylor, no case has suggested that, that that's ever unconstitutional to do that in the heat. You talk about the prolonged holding of the gun, of course. Of course. There's no justification for that. How does the law get officers to behave in ways that are less risky unless these suits start clearly establishing the law that the prior steps are not reasonable? I am so with you on this. That, yes, tell them what the rules are. And the next time, they can say they didn't know. But when you read these cases, there is no case. So if this court decides that it's the finger on the trigger is the key thing, then you articulate it. Officer Duncan is qualified immunity, and they know in the future. That's how qualified immunity is supposed to work. Unfortunately, for those of us that work in law enforcement, the courts repeatedly say, on these facts, we're going to give them qualified immunity. And they won't say on what facts they won't. So when you read all those opinions, trying to figure out what's actually, what facts will get you in trouble is impossible because they won't say it. What they say is, under these facts, there might be a constitutional violation. But we're going to give them qualified immunity. So the problem for the officers is that the courts don't say, but under these facts, it is a constitutional violation going forward. Not clear today. Don't ever do it again. The other way to get less risk, Your Honor, is to get the guns off the streets. Because I'm serious. If you're in law enforcement now, you're going to a house where they believe there are guns, people can open fire on you, and then we get to sit here and say, what should you have done? You've reserved three minutes, I think. I'm already eight minutes over. We have been generous to you. Thank you. All right. Good morning, Your Honors. Anthony Terracone, representing the Stamps family. Let me start by taking issue with the idea that the cases are all over the place and there are multiple lines of cases. That just isn't so. Judge Saylor chose not to follow the Dodd case, which is the Second Circuit case decided before the Brower and Graham cases. He also declined to follow the Bryce, Troublehead, and Clark cases, saying that he wasn't persuaded and they seemed to follow the Dodd case. But all of those cases, if you look at them, fit into the framework that was articulated by Justice Scalia in the Brower decision, where he said that the key is that the intentionality requirement is met when a person is stopped by the very instrumentality set in motion or put in place to achieve that result. In all of those cases, the Dodd case, the Bryce case, Troublefield, and Clark, the seizure was affected by physical control, by holstering, by some other activity, voice commands. The guns discharged incidentally while they were being holstered. They were not the principal means of seizing the victim. Let's assume you're correct. The fact that the actual culmination of the risk through the firing of the gun was not intentional, is not dispositive, which I think is the point you're making. Suppose Officer Duncan had come to you the day before this raid and described to you exactly what he was going to do. He was going to have the safety off. He was going to do this, the exact facts of this case, and said to you, is that constitutional or not? What case would you have pointed him to? Would you have told him to read from which he could figure out or a lawyer could figure out, because it's kind of a fiction that we engage in here, that it would be unconstitutional? That's got to be the first step. I have two answers to that. The first is if you look at the cases that go back to 1981 that are in our brief. I'm still not hearing a case name. We have listed pages 31 through 35. There are five circuits that have held. The Holland case is one, the Tenth Circuit, going back many, many years. The pointing of firearms directly at persons inescapably involves the immediate threat of deadly force. There's a long line of cases that point to pointing the weapon. So what? Of course it does. But legally, is it unreasonable simply to point a gun at someone? It depends on the circumstances. Yes, exactly. It depends on the circumstances. So let's go back. Do you have a case with circumstances like this? I can't find a case that is as egregious as this, as Judge Saylor noted. The discrepancy between the amount of force that was used and the risk posed by Mr. Stamps, 68 years old, on his stomach, completely compliant, known not to be a risk, known to be in the house, not an actual threat. There was no perceived threat. And there was no expected threat in those circuits. Isn't your best case actually in this circuit Judge Lynch's opinion and Lodzczynski? That is, I would agree with that, Your Honor. Absolutely. And here's the problem. I believe that the seven minutes makes a difference, because in the totality of the circumstances, this was way disproportionate. Help me with this then, because here's the problem. Because I think it is your best case when you read it. But when I get to the end of the case, I then have the circuit having talked about the seven minutes with the gun on a young girl in a situation, then says, the situation would be very different if, given the execution of these warrants, Tina had been detained with a weapon pointed at her for only a very short period needed while she was being cuffed. Well, Your Honor. But once the circuit says, well, we're not deciding that, how do you turn that case into a clearly establishing that? Because the circumstances here are vastly different. The circumstances here are that the safety was deliberately turned off before the encounter. Duncan's finger was on the trigger. And let me just tell you what's in the record. This is from the defendant. Officer Duncan deviated from his training and FPD protocol by having his finger on the trigger. And that's at page 104 of the record. That's the defendant's statement of facts. It is that he deliberately put his finger on the trigger and- Is the test that we apply whether he violated department regulations- That was my second point. Or is the test whether he's violated a clearly established rule from the Supreme Court or this court? Well, the question of reasonableness can be determined by looking at department rules and training. And in this case, we have three rules here that he violated. Each one of them was designed for the very purpose of preventing this kind of an incident. Had he complied with any one of them, we would not be here today. He violated all of them. And whether it was from sheer incompetence, which this court noted in the Landau case that there is no immunity for officers who are just plain incompetent, or whether he It is clearly disproportionate force that was used here. And I would add that the test is what would a reasonable officer do? The day after this event, Officer Duncan was terminated from the SWAT team. And the reason he was, Deputy Chief Craig Davis, Sergeant Vincent Stewart, and Lieutenant Robert Downing, the latter two who were in the room that day, all said that there was no perceived threat. And that because there was no perceived threat, and because he was not actively clearing the room, he violated procedure by having the safety off. He also violated the procedure by having his finger on the trigger. It's a written policy. It's in the record appendix, page 815. You'll see the policy. No finger on the trigger unless you intend to shoot. The muzzle, third rule, the muzzle must be kept in a safe direction at all times, unless you intend to shoot. Your Honor, ask about what rules should, how do we establish rules? These are rules that were designed to prevent this from happening. And either through sheer incompetence or willful decision not to abide by them. Duncan did not abide by them. And that constitutes excessive force. Suppose hypothetically that the father on seeing, I don't know what he could see, but assume he saw his son being arrested, but at the same time, the barrel of the rifle comes down on his son's head because excessive force is being used. The father then struggles to get up to go to the assistance of his son. But Your Honor, from a 10,000 foot level, all of these decisions make sense. There is not another case like this one. In all of these other cases, there either is a struggle, there's somebody evading the police. Yes, but an objective officer, I've just put out a scenario where an objective officer might think the father on the ground was insufficient to protect the two other officers who were then engaged in arresting the son and his friend. Well, the rules of the department are clear. Unless he intends to use the weapon, he shouldn't aim it directly at somebody. In his face, with his finger on the trigger. There's a problem with taking the department's rules as a constitutional standard. It's certainly evidence of, it's powerful evidence of, but the courts don't delegate to police departments the definition of what's unreasonable. Understood, Your Honor. However, on the issue of reasonableness, the rules and regulations and training are relevant. Yes, of course, Your Honor. And here, these are universal rules. These aren't unusual rules. They're universal. Is there evidence in the record that it is universal that every police department, that this would be a violation of the standards of every police department that has standards in the U.S.? We have expert testimony that this is standard protocol. So for summary judgment purposes, we can assume that what this officer did here violated the standard protocol of essentially all departments throughout the U.S.? That is in the record, yes, Your Honor. Mr. Keston is shaking his head in disagreement with you. I'd like both of you not to battle it out here, but send us in the 28J letter what you have to say on that point with record citation. Didn't the police officer offer an expert witness that testified to the contrary? I do not believe you will see that in the record, that it was permissible for him to do what he did here. And I should add that the reason the plaintiffs went to great lengths to point out the scenario there is because that Duncan's version of what happened is that he fell while he was climbing over Mr. Stamps, slid against the wall in the hallway, not in the kitchen. The other three officers who were in the kitchen, two of them turned around when the gun was fired, and they testified clearly and unequivocally that Duncan was on his feet in the kitchen. Bullets go straight. They don't turn corners. And that is the story that they put forth is just so contrary to any sense of reality. But I would like to just close with this. There is an amicus brief that's been filed by a distinguished group of amici, and the reason for that is because this Court's decision isn't just about giving some measure of justice to the Stamps family. In these kinds of cases, this Court establishes the parameters of acceptable use of force by police departments in the entire circuit. What kind of a message would it send to police officers, and what would it mean in the future for searches and seizures if this Court were to hold on these facts that Duncan's fully compliant, 68 years old, on his belly with his hands in the air? If an officer can aim a fully loaded semi-automatic assault rifle less than three feet from his face, finger on the trigger, safety off, what kind of a message would that send? You've oversimplified the qualified immunity analysis. There are steps beyond that. Even if we were to make that the law of the circuit, the question still exists of whether there was a prior case sufficiently like this that would have given him sufficient notice such that he is not entitled to immunity. Your Honor, I believe that Judge Saylor's analysis on this issue is correct, and that is the amount of force here was so disproportionate that any reasonable officer would have known. And indeed, his own colleagues, evaluating what he did, made that same determination, and they could be viewed as other reasonable officers in the same situation. Okay. Thank you. Thank you. The policies of police departments are not evidence of constitutional violations under this circumstance. They are not even admissible at trials. They're excluded. Policies are often more restrictive. I give you the Plumhoff case. You know the Plumhoff case. It's a Supreme Court case, which is a high speed pursuit. The officers have blocked the car in. The car managed to get out. They fired 23 shots, killing the driver and the passenger. Those actions violated every chase policy in the country by a long shot. You're not supposed to continue a chase for a long time. Every policy says once it gets to be dangerous. You're supposed to break it off. You can't shoot at a car that's driving away from you. It violates every policy. Supreme Court said it was constitutional. But that doesn't mean those are relevant. I mean, one of the things as a court is you want to recognize the difficult, fast action choices police officers need to make and their expertise that maybe we don't have. And so it's helpful to know if, in fact, all the police departments themselves say don't do something. Then it's a little less problematic for us to say it's unreasonable to do that. Well, but a court first has to say that. Well, now you're qualifying. Well, the officers are on notice, OK? So I get you. I don't disagree at all. How else are you going to figure it out? I mean, it's always difficult when the courts say we're not going to look at policies, but we have to somehow figure it out. But I know that in this circuit, so far in every case I've ever had, they've excluded evidence of violation of policy from the constitutional analysis that Dewey makes. And I'm going to say it right. That's also the subject of the 28-J letter. I'd like you to substantiate that, and if that police policies may not be put into evidence as to the reasonableness under the Constitution of the Officers Act. I will. I just won this point from Judge Wolf in a shooting case. And he excluded it. By a circuit court. No, I understand. Yes. He excluded it based on the... In Morczynski's, the way I pronounce it, I was born in Poland. In Morczynski, the words that Judge Kayada cited, it's exactly right. In Morczynski, the concern was it was too long, and it was after everybody was secure. In every one of these guns to the head cases. So when I shook my head, what I'm saying is the finger on the trigger, absolutely right. You're not supposed to, ever. But it's the safety. Because my opponent said that all these things are forbidden. That's not true. The safety is actually... People have different views on it. Safety on, safety off. Framingham chose to have it off. So this argument, this is going to be so terrible. This is an accident that happens once in a blue moon. And the police department acted, in fact. They're not waiting for you to tell them. Okay. Thank you both.